IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

TODD M. LOPEZ, as Personal Representative
of the Estate of Alberto Alvarez, Jr., Decedent;
SANDRA ANCHONDO, Individually and as
Next Friend of A.A., a Minor; ANAHY
ALVAREZ ANCHONDO; LUCY RIVER, as
Personal Representative of the Estate of Israel
Martinez, Decedent; MARY MARTINEZ,
Individually and as Next Friend of M.M.,
A.O.M., I.M.J., Minor Children, and NITTY
DANIELA MARTINEZ,

        Plaintiffs,

vs.                                                                      No. CIV 22-0937 JB/LF

SPUR ENERGY PARTNERS, LLC, a Foreign
Limited Liability Company; MICHAEL
BISHOP, Individually and as Agent of Spur
Energy Partners; DOUGLAS BORING,
Individually and as an Agent of Spur Energy
Partners; KIPPER FOLMAR, Individually and
as Agent of Spur Energy Partners; RENE
QUINTANA, Individually and as an Agent of
Spur Energy Partners; GRAVITY OILFIELD
SERVICES, LLC, a Foreign Limited Liability
Company; JOHN DOES I-V; JANE DOES VI-
X; BLACK AND WHITE CORPORATIONS
XI-XV; ABC PARTNERSHIPS XVI-XX and
XYZ ORGANIZATIONS XXI-XXV,

        Defendants.

**MEMORANDUM OPINION[1]**

**THIS MATTER** comes before the Court on the Plaintiffs' Motion to Remand and For

---

[1]On September 22, 2023, the Court entered an Order disposing of the Plaintiffs' Motion to Remand and For Costs, filed January 9, 2023 (Doc. 7)("Motion"). See Order at 2, filed September 22, 2023 (Doc. 30). In the Order, the Court states that it "will issue at a later date, however, a Memorandum Opinion more fully detailing its rationale for this decision and a separate Final Judgment." Order at 1 n.1. This Memorandum Opinion is the promised opinion.

Costs, filed January 9, 2023 (Doc. 7)("Motion").  The Court held a hearing on March 16, 2023.

See Clerk's Minutes at 1, filed March 16, 2023 (Doc. 29).  The primary issue is whether Defendant

Spur Energy Partners, LCC's removal to federal court on the basis of fraudulent joinder is

improper, and, therefore, that remand is appropriate, because the Plaintiffs have asserted viable

claims against the New Mexico residents -- Defendants Michael Bishop, Douglas Boring, and

Kipper Folmar (the "New Mexico Defendants") -- whom Spur Energy asserts that the Plaintiffs

have fraudulently joined.  The Court concludes: (i) that remand is appropriate, because Spur Energy

has not demonstrated that there is no possibility that the Plaintiffs would be able to obtain a

judgment against the New Mexico Defendants, see Draft Transcript of Hearing at 58:6-59-22 (taken

March 16, 2023)("Tr.")(Court);[2] id. at 60:9-15 (Court); and (ii) that no costs or fees be awarded,

see Tr. at 59:13-14.

## LAW REGARDING REMAND AND REMOVAL

If a civil action filed in state court satisfies the requirements for original federal

jurisdiction -- meaning, most commonly, federal-question or diversity jurisdiction -- the defendant

may invoke 28 U.S.C. § 1441(a) to remove the action to the federal district court "embracing the

place where such action is pending."  28 U.S.C. § 1441(a).  See Huffman v. Saul Holdings LP,

194 F.3d 1072, 1076 (10th Cir. 1999)("When a plaintiff files in state court a civil action over which

the federal district courts would have original jurisdiction based on diversity of citizenship, the

defendant or defendants may remove the action to federal court . . . .")(quoting Caterpillar Inc. v.

Lewis, 519 U.S. 61, 68 (1996)).  In a case with multiple defendants, there must be unanimous

consent to removal; any one defendant may spoil removal and keep the case in state court.  See

---

[2]The Court's citations to the transcript of the hearing refer to the court reporter's original,
unedited version.  Any final transcript may contain slightly different page and/or line numbers.

28 U.S.C. § 1446(b)(2)(A).  Only true defendants have removal rights: plaintiffs defending counterclaims and third-party defendants may not remove an action, and their consent is not required for removal if all the true defendants consent.  See Home Depot U.S.A., Inc. v. Jackson, 587 U.S. 435, 440-44 (2019); Hamilton v. Aetna Life & Cas. Co., 5 F.3d 642, 643-44 (2d Cir. 1993); Mach v. Triple D Supply, LLC, 773 F. Supp. 2d 1018, 1051 (D.N.M 2011)(Browning, J.); Wiatt v. State Farm Ins. Co., 560 F. Supp. 2d 1068 (D.N.M. 2007)(Browning, J.).  "A plaintiff objecting to the removal may file a motion asking the district court to remand the case to state court."  Huffman v. Saul Holdings LP, 194 F.3d at 1076 (citing Caterpillar Inc. v. Lewis, 519 U.S. at 69).

To remove a case based on diversity, the diverse defendant must demonstrate that all of the usual prerequisites of diversity jurisdiction are satisfied.  Under 28 U.S.C. § 1332(a), a federal district court possesses original subject-matter jurisdiction over a case when the parties are diverse in citizenship and the amount in controversy exceeds $75,000.00.  See 28 U.S.C. § 1332(a); Johnson v. Rodrigues, 226 F.3d 1103, 1107 (10th Cir. 2000).  Diversity between the parties must be complete.  See Caterpillar Inc. v. Lewis, 519 U.S. at 68; Radil v. Sanborn W. Camps, Inc., 384 F.3d 1220, 1225 (10th Cir. 2004).  In addition to the requirements of original jurisdiction, § 1441(b)(2) lays out the "forum-defendant rule," which provides that a case may not be removed on the basis of diversity jurisdiction if any defendant is a citizen of the state in which the state-court action was brought.  Brazell v. Waite, 525 F. App'x 878, 884 (10th Cir. 2013)(unpublished).[3]  The Tenth Circuit wrote:

---

[3]Brazell v. White is an unpublished opinion, but the Court can rely on an unpublished opinion to the extent its reasoned analysis is persuasive in the case before it.  See 10th Cir. R. 32.1(A), 28 U.S.C. ("Unpublished decisions are not precedential, but may be cited for their persuasive value.").  The Tenth Circuit states:

> [W]e note that § 1441(b)(2) -- the so-called forum-defendant rule -- provides as a separate requirement that "[a] civil action otherwise removable solely on the basis of [diversity] jurisdiction . . . may not be removed if any of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought."

Brazell v. Waite, 525 F. App'x at 884 (alteration in original)(quoting 28 U.S.C. § 1441(b)(2)). See City of Albuquerque v. Soto Enters., Inc., 864 F.3d 1089, 1096 n.11 (10th Cir. 2017)("The forum-defendant rule prohibits removal when a case is removed for diversity jurisdiction and the defendant 'is a citizen of the State in which such action is brought.'" (quoting 28 U.S.C. § 1441(b)(2))).   The forum-defendant rule applies only to cases removed under diversity jurisdiction; a defendant may remove a case brought against it in its home state on the basis of federal-question jurisdiction.  See 28 U.S.C. § 1441(b).  Last, a case cannot be removed if it began with a nondiverse party or forum-citizen defendant, and only later came to satisfy the requirements of removal jurisdiction, unless: (i) the plaintiff voluntarily dismissed the removal-spoiling party, see DeBry v. Transamerica Corp., 601 F.2d 480, 488 (10th Cir. 1979); Flores-Duenas v. Briones, No. CIV 0660, 2013 WL 6503537, at *12 n.6, *26 (D.N.M. Dec. 1,

---

> In this circuit, unpublished orders are not binding precedent, . . . and we have generally determined that citation to unpublished opinions is not favored. However, if an unpublished opinion or order and judgment has persuasive value with respect to a material issue in a case and would assist the court in its disposition, we allow a citation to that decision.

United States v. Austin, 426 F.3d 1266, 1274 (10th Cir. 2005).  The Court finds that Brazell v. Waite, 525 F. App'x 878 (10th Cir. 2013), Sheldon v. Khanal, Browning v. American Family Mutual Insurance Co., Jenkins v. MTGLQ Investors, Nerad v. AstraZeneca Pharms., Inc., Oklahoma Farm Bureau Mutual Insurance Co. v. JSSJ Corp., Montano v. Allstate Indemnity Co., and Watkins v. Terminix International Co., all have persuasive value with respect to material issues and will assist the Court in its disposition of this Memorandum Opinion.

2013)(Browning, J.)(describing the operation of the "voluntary-involuntary" rule)[4]; or (ii) the removal-spoiling party was fraudulently joined or procedurally misjoined.

1.    **The Presumption Against Removal.**

Federal courts are courts of limited jurisdiction; thus, there is a presumption against removal jurisdiction, which the defendant seeking removal must overcome. See Laughlin v. Kmart Corp., 50 F.3d 871, 873 (10th Cir. 1995); Fajen v. Found. Reserve Ins. Co., 683 F.2d at 333; Martin v. Franklin Capital Corp., 251 F.3d at 1290; Bonadeo v. Lujan, No. CIV 08-0812, 2009 WL 1324119, at *4 (D.N.M. Apr. 30, 2009)(Browning, J.)("Removal statutes are strictly construed, and ambiguities should be resolved in favor of remand."). The defendant seeking removal must establish that federal court jurisdiction is proper "by a preponderance of the evidence." McPhail v. Deere & Co., 529 F.3d at 953 (10th Cir. 2008). See Bonadeo v. Lujan, 2009 WL 1324119, at *4 ("As the removing party, the defendant bears the burden of proving all jurisdictional facts and of establishing a right to removal."). Because federal courts are courts of limited jurisdiction, the Tenth Circuit has ruled that "courts must deny such jurisdiction if not affirmatively apparent on the record." Okla. Farm Bureau Mut. Ins. Co. v. JSSJ Corp., 149 F. App'x 775, 778 (10th Cir. 2005)(unpublished). On the other hand, this strict construction and presumption against removal should not be interpreted as a hostility toward removal cases in the federal courts. See McEntire

---

[4]The Tenth Circuit explains:

The general effect of the [voluntary-involuntary] test is that a cause cannot be removed where the removability is a result of some development other than a voluntary act of plaintiff. The cause cannot be removed as a result of evidence from the defendant or the result of a court order rendered on the merits of the case.

DeBry v. Transamerica Corp., 601 F.2d at 488 (citation omitted).

v. Kmart Corp., 2010 WL 553443, at *2 (citing Bonadeo v. Lujan, 2009 WL 1324119, at *12 ("Strict construction does not mean judicial hostility toward removal. Congress provided for removal, and courts should not create rules that are at tension with the statute's language in the name of strict construction.")).

"It is well-established that statutes conferring jurisdiction upon the federal courts, and particularly removal statutes, are to be narrowly construed in light of our constitutional role as limited tribunals." Pritchett v. Office Depot, Inc., 420 F.3d 1090, 1095 (10th Cir. 2005)(citing Shamrock Oil & Gas Corp. v. Sheets, 313 U.S. 100, 108-09 (1941); United States ex rel. King v. Hillcrest Health Ctr., 264 F.3d 1271, 1280 (10th Cir. 2001)). "All doubts are to be resolved against removal." Fajen v. Found. Reserve Ins. Co., 683 F.2d 331, 333 (10th Cir. 1982). "The burden of establishing subject-matter jurisdiction is on the party asserting jurisdiction." Montoya v. Chao, 296 F.3d 952, 955 (10th Cir. 2002).

### 2.    Removal's Procedural Requirements.

Section 1446 of Title 28 of the United States Code governs the procedure for removal. "Because removal is entirely a statutory right, the relevant procedures to effect removal must be followed." Thompson v. Intel Corp., 2012 WL 3860748, at *5. A removal that does not comply with the express statutory requirements is defective, and the Court must, upon request, remand the case to state court. See Huffman v. Saul Holdings LP, 194 F.3d at 1077. See also Chavez v. Kincaid, 15 F. Supp. 2d 1118, 1119 (D.N.M. 1998)(Campos, J.)("The [r]ight to remove a case that was originally in state court to federal court is purely statutory, not constitutional.").

Section 1446(a) provides that a party seeking removal of a matter to federal court shall file a notice of removal in the district and division where the state action is pending, "containing a short and plain statement of the grounds for removal, together with a copy of all process, pleadings,

and orders served upon such defendant or defendants in such action." Such notice of removal is proper if filed within thirty-days from the date when the case qualifies for federal jurisdiction. See Caterpillar Inc. v. Lewis, 519 U.S. at 68-69; 28 U.S.C. § 1446(b). The Tenth Circuit has further elaborated that, for the thirty-day period to begin to run, "this court requires clear and unequivocal notice from the [initial] pleading itself" that federal jurisdiction is available. Akin v. Ashland Chem. Co., 156 F.3d 1030, 1036 (10th Cir. 1998). The Tenth Circuit specifically disagrees with "cases from other jurisdictions which impose a duty to investigate and determine removability where the initial pleading indicates that the right to remove may exist." Akin v. Ashland Chem. Co., 156 F.3d at 1036.[5]

After the notice of removal is filed, all state-court proceedings are automatically stayed, and the other defendants in the case -- if not all defendants joined in the removal -- have thirty days to consent to the removal of the action. See 28 U.S.C. § 1446(b)(2). "When a civil action is removed solely under section 1441(a) [the standard removal statute, which excludes multiparty, multiforum jurisdiction], all defendants who have been properly joined and served must join in or consent to the removal of the action." 28 U.S.C. § 1446(b)(2)(A). The failure of all defendants to consent to removal will result in remand. See Tate v. Mercedes-Benz USA, Inc., 151 F. Supp. 2d 222, 223-24 (N.D.N.Y. 2001)("Absent such consent, the removal petition is defective and the usual course of conduct is for the federal court to remand the action back to state court."). The rule of unanimity applies to all defendants, whether they are required parties under rule 19 or merely

---

[5]Congress clarified removal jurisdiction and procedures in the Federal Courts Jurisdiction and Venue Clarification Act of 2011, Pub. L. No. 112-63, 125 Stat. 758. See Thompson v. Intel Corp., No. CIV 12-0620 JB/LFG, 2012 WL 3860748, at *12 n.5 (D.N.M. Aug. 27, 2012)(Browning, J.)(discussing the Act).

proper parties under rule 20.  See 14C C. Wright & A. Miller, Federal Practice & Procedure § 3730, at 459 (4th ed. 2009).  Defendants who have not been served, however, need not join in removal. See Kiro v. Moore, 229 F.R.D. 228, 230-32 (D.N.M. 2005)(Browning, J.).

Section 1447(c) permits the district court to "require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal."  28 U.S.C. § 1447(c).  The Supreme Court has stated:

> The appropriate test for awarding fees under § 1447(c) should recognize the desire to deter removals sought for the purpose of prolonging litigation and imposing costs on the opposing party, while not undermining Congress' basic decision to afford defendants a right to remove as a general matter, when the statutory criteria are satisfied.

Martin v. Franklin Capital Corp., 546 U.S. 132, 140 (2005).  The Tenth Circuit has limited district courts' discretion to impose costs and fees to those cases in which the removal was objectively unreasonable.  See Garret v. Cook, 652 F.3d 1249, 1254 (10th Cir. 2011)("[C]ourts may award attorney's fees under § 1447(c) only where the removing party lacked an objectively reasonable basis for seeking removal.").

The Court awarded costs and attorneys' fees to a plaintiff in New Mexico ex rel. Balderas v. Valley Meat Co., LLC, because the Court determined that the removal motion was objectively unreasonable.  See No. CIV 14-1100, 2015 WL 3544288, at *26 (D.N.M. May 20, 2015) on reconsideration in part sub nom. New Mexico v. Valley Meat Co., LLC, No. CIV 14-1100, 2015 WL 9703255 (D.N.M. Dec. 14, 2015)(Browning, J.).  The Court determined that: (i) the party seeking removal -- D'Allende Meats -- was not statutorily authorized to file removal, because D'Allende Meats was not a defendant; (ii) D'Allende Meats did not obtain any defendants' affirmative consent to removal, which is necessary even if joint counsel represents each defendant; (iii) D'Allende Meats' assertion that the Court had civil-rights jurisdiction over the case lacked a

sound basis in the case's facts; and (iv) neither the case's facts or case law supported D'Allende Meats' assertion that the Court had federal-question jurisdiction. See 2015 WL 3544288, at *26. The Court concluded that "[f]ailure on any one of these bases would, on its own, justify remand[, but] [w]hiffing on all four warrants the imposition of costs and fees." 2015 WL 9703255, at *27.

    **3.**    **<u>Amendment of the Notice of Removal.</u>**

In <u>Caterpillar, Inc. v. Lewis</u>, the Supreme Court held that a defect in subject-matter jurisdiction cured before entry of judgment did not warrant reversal or remand to state court. See 519 U.S. at 70-78. Citing <u>Caterpillar, Inc. v. Lewis</u>, the Tenth Circuit has held that "a defect in removal procedure, standing alone, is not sufficient to warrant vacating judgment and remand to state court if subject matter jurisdiction existed in the federal court." <u>Browning v. Am. Family Mut. Ins. Co.</u>, 396 F. App'x 496, 505-06 (10th Cir. 2010)(unpublished). In <u>McMahon v. Bunn-O-Matic Corp.</u>, 150 F.3d 651 (7th Cir. 1998)(Easterbrook, J.), the United States Court of Appeals for the Seventh Circuit noticed, on appeal, defects in the notice of removal, including that the notice failed to properly allege diversity of citizenship. See 150 F.3d at 653 ("As it happens, no one paid attention to subject-matter jurisdiction . . . ."). The Seventh Circuit nevertheless permitted the defective notice of removal to be amended on appeal to properly establish subject-matter jurisdiction. See 150 F.3d at 653-54.

The Tenth Circuit has allowed defendants to remedy defects in their petition or notice of removal. See <u>Jenkins v. MTGLQ Investors</u>, 218 F. App'x. 719, 723 (10th Cir. 2007) (unpublished)(granting unopposed motion to amend notice of removal to properly allege jurisdictional facts); <u>Watkins v. Terminix Int'l Co.</u>, Nos. CIV 96-3053, 96-3078, 1997 WL 34676226, at *2 (10th Cir. May 22, 1997)(per curiam)(unpublished)(reminding the defendant that, on remand, it should move to amend the notice of removal to properly allege jurisdictional facts);

Lopez v. Denver & Rio Grande W. R.R. Co., 277 F.2d 830, 832 (10th Cir. 1960)("Appellee's motion to amend its petition for removal to supply sufficient allegations of citizenship and principal place of business existing at the time of commencement of this action is hereby granted, and diversity jurisdiction is therefore present.").  The Tenth Circuit has further reasoned that disallowing amendments to the notice of removal, even after the thirty-day removal window had expired, when the defendant made simple errors in its jurisdictional allegations, "would be too grudging with reference to the controlling statute, too prone to equate imperfect allegations of jurisdiction with the total absence of jurisdictional foundations, and would tend unduly to exalt form over substance and legal flaw-picking over the orderly disposition of cases properly committed to federal courts."  Hendrix v. New Amsterdam Cas. Co., 390 F.2d 299, 301 (10th Cir. 1968).  The Tenth Circuit has noted that a simple error in a jurisdictional allegation includes failing to identify a corporation's principal place of business or referring to an individual's state of residence rather than citizenship.  See Hendrix v. New Amsterdam Cas. Co., 390 F.2d at 301.  In McEntire v. Kmart Corp., when faced with insufficient allegations in the notice of removal -- allegations of "residence" not "citizenship" -- the Court granted the defendants leave to amend their notice of removal to cure the errors in some of the "formalistic technical requirements."  2010 WL 553443, at *8 (citing Hendrix v. New Amsterdam Cas. Co., 390 F.2d at 300-02).  Further, in Thompson v. Intel Corp., the Court permitted the defendant, Intel Corp., to amend its notice of removal to include missing jurisdictional elements, including evidence that its principal place of business and corporate headquarters -- the center of Intel Corp.'s direction, control, and coordination of activities -- is out of state, so that the diversity requirements were met.  See 2012 WL 3860748, at *1.

There are limits to the defects that an amended notice of removal may cure, however, as Professors Charles Alan Wright and Arthur R. Miller explain:

> [A]n amendment of the removal notice may seek to accomplish any of several objectives: It may correct an imperfect statement of citizenship, state the previously articulated grounds more fully, or clarify the jurisdictional amount. In most circumstances, however, defendants may not add completely new grounds for removal or furnish missing allegations, even if the court rejects the first-proffered basis of removal, and the court will not, on its own motion, retain jurisdiction on the basis of a ground that is present but that defendants have not relied upon.

14 C. Wright & A. Miller, Federal Practice & Procedure § 3733, at 651-59 (4th rev. ed. 2019)(footnotes omitted). Professor James William Moore has similarly recognized: "[A]mendment may be permitted after the 30-day period if the amendment corrects defective allegations of jurisdiction, but not to add a new basis for removal jurisdiction." 16 J. Moore, D. Coquillette, G. Joseph, S. Schreiber, G. Vairo, & C. Varner, Moore's Federal Practice § 107.30[2][a][iv], at 107-317 to -18 (3d ed. 2013). Thus, where diversity jurisdiction is asserted as a basis for removal of an action to federal court, the district court may permit the removing defendant to amend its removal notice, if necessary, to fully allege facts which satisfy the requirements of diversity jurisdiction by a preponderance of the evidence. See Carrillo v. MCS Indus., Inc., No. CIV 12-0573, 2012 WL 5378300, at *14 (D.N.M. Oct. 15, 2012)(Browning, J.)(permitting party to amend its notice of removal when the removing party did "not assert[] a new basis for jurisdiction, or a new allegation not present in its Notice of Removal; rather, the . . . Amended Notice of Removal provide[d] greater detail regarding the same basis for jurisdiction asserted in the . . . Notice of Removal"). Cf. New Mexico ex rel. Balderas v. Valley Meat Co., No. CIV 14-1100, 2015 WL 3544288, at *25 (D.N.M. May 20, 2015)(Browning, J.)(denying amendment when it sought to assert a new jurisdictional basis that was not raised in the notice of removal).

4.      **Consideration of Post-Removal Evidence**.

The Tenth Circuit looks to both evidence in the complaint and submitted after the complaint in determining whether the criteria necessary for removal are met.  See Thompson v. Intel Corp., 2012 WL 3860748, at *8 (citing McPhail v. Deere & Co., 529 F.3d at 956).  The Tenth Circuit explained in McPhail v. Deere & Co. that a district court may have evidence presented to it after a notice of removal has been filed, even if produced at a hearing on subject-matter jurisdiction, to determine if the jurisdictional requirements are met.  See 529 F.3d at 953. "[B]eyond the complaint itself, other documentation can provide the basis for determining the amount in controversy -- either interrogatories obtained in state court before removal was filed, or affidavits or other evidence submitted in federal court afterward."  McPhail v. Deere & Co., 529 F.3d at 956 (citing Meridican Secs. Ins. Co. v. Sadowski, 441 F.3d 536, 541-42 (7th Cir. 2006), and Manguna v. Prudential Prop. & Cas. Ins. Co., 276 F.3d 720, 723 (5th Cir. 2002)).  As this Court has explained, "the Seventh Circuit, on which the Tenth Circuit has heavily relied when addressing the amount in controversy, has recognized that 'events subsequent to removal may clarify what the plaintiff was actually seeking when the case was removed.'"  Aranda v. Foamex Int'l, 884 F. Supp. 2d 1186, 1208 (D.N.M. 2012)(Browning, J.)(quoting Carroll v. Stryker Corp., 658 F.3d 675, 681 (7th Cir. 2011)).  Thus, when determining if the requirements for federal jurisdiction are met in a matter removed from state court, a district court may consider evidence submitted after removal.  See Thompson v. Intel Corp., 2012 WL 3860748, at *14 ("[I]t is appropriate to consider post-removal evidence to determine whether subject-matter jurisdiction exists."); Carrillo v. MCS Indus., Inc., 2012 WL 5378300, at *6-9.

5.     **Fraudulent Joinder.**

A defendant may remove a case to federal court based upon diversity jurisdiction in the absence of complete diversity if a plaintiff joins a nondiverse party fraudulently to defeat federal jurisdiction.  See Am. Nat'l Bank & Trust Co. v. Bic Corp., 931 F.2d 1411, 1412 (10th Cir. 1991); Hernandez v. Menlo Logistics, Inc., No. CIV 12-0907, 2013 WL 5934411, at *14-17 (D.N.M. Sept. 30, 2013)(Browning, J.).  A defendant may remove on the basis of fraudulent joinder either while the nondiverse party is still joined or after it is dismissed from the case -- the doctrine can thus function as an exception to either complete diversity or the voluntary-involuntary rule.  "'[A] fraudulent joinder analysis [is] a jurisdictional inquiry,'" Bio-Tec Envtl., LLC v. Adams, 792 F. Supp. 2d at 1214 (quoting Albert v. Smith's Food & Drug Ctrs., Inc., 356 F.3d 1242, 1247 (10th Cir. 2004)), and, thus, the Tenth Circuit instructs that the district court should "pierce the pleadings, consider the entire record, and determine the basis of joinder by any means available," Dodd v. Fawcett Publ'ns, Inc., 329 F.2d 82, 85 (10th Cir. 1964)(citations omitted).  "A district court may disregard a nondiverse party named in the state court complaint and retain jurisdiction if joinder of the nondiverse party is a sham or fraudulent."  Baeza v. Tibbetts, No. CIV 06-0407, 2006 WL 2863486, at *3 (D.N.M. July 7, 2006)(Vázquez, J.).  The Supreme Court has stated: "Merely to traverse the allegations upon which the liability of the resident defendant is rested or to apply the epithet 'fraudulent' to the joinder will not suffice: the showing must be such as compels the conclusion that the joinder is without right and made in bad faith."  Chesapeake & Ohio Ry. Co. v. Cockrell, 232 U.S. 146, 152 (1914).  The Tenth Circuit has explained that allegations of fraudulent joinder complicate the analysis whether removal is proper, because, "[w]hile a court normally evaluates the propriety of a removal by determining whether the allegations on the face of the complaint satisfy the jurisdictional requirements, fraudulent joinder claims are assertions

that the pleadings are deceptive." Nerad v. AstraZeneca Pharms., Inc., 203 F. App'x 911, 913 (10th Cir. 2006)(unpublished).

The party asserting fraudulent joinder bears the burden of proof. See Montano v. Allstate Indem. Co., 211 F.3d 1278, 2000 WL 525592, at *1 ("The case law places a heavy burden on the party asserting fraudulent joinder."). "To justify removal based on diversity jurisdiction, a defendant must plead a claim of fraudulent joinder with particularity and prove the claim with certainty." Couch v. Astec Indus., Inc., 71 F. Supp. 2d 1145, 1146-47 (D.N.M. 1999)(Baldock, J.). Before 2013, the most recent published Tenth Circuit decision to state the burden of proof for demonstrating fraudulent joinder was issued over forty years earlier in Smoot v. Chicago, Rock Island & Pacific Railroad Co., 378 F.2d 879 (10th Cir. 1967). The Tenth Circuit said that fraudulent joinder must be "established with complete certainty upon undisputed evidence." Smoot v. Chi., Rock Island & Pac. R.R. Co., 378 F.2d at 882.

Actual fraud -- e.g., a plaintiff colluding with a nondiverse defendant to defeat removal[6] -- suffices to establish fraudulent joinder, but it is not required. See McLeod v. Cities Serv. Gas Co., 233 F.2d 242, 246 (10th Cir. 1956)("[C]ollusion in joining a resident defendant for the sole purpose of preventing removal . . . may be shown by any means available."). In Smoot v. Chicago, Rock Island & Pacific Railroad Co., the Tenth Circuit states two other bases for finding fraudulent joinder: (i) "[t]he joinder of a resident defendant against whom no cause of action is stated is a patent sham"; or (ii) "though a cause of action be stated, the joinder is similarly

---

[6]Collusion might look something like this: a plaintiff names a nondiverse defendant under a highly dubious theory of liability; the plaintiff contacts the defendant and offers to dismiss the case at the end of the one-year limitation, see 28 U.S.C. § 1446(c), if the defendant agrees not to move to dismiss before the one-year mark; the defendant agrees to the arrangement to save litigation costs, as well as to avoid any slim chance that the court decides to recognize the plaintiff's theory of liability against it.

fraudulent if in fact no cause of action exists." 378 F.2d at 882 (quoting <u>Dodd v. Fawcett Pubs.,</u> <u>Inc.</u>, 329 F.2d 82, 85 (10th Cir. 1964)). The Tenth Circuit found fraudulent joinder, because the joined party's non-liability was "established with complete certainty upon undisputed evidence." 378 F.2d at 882. "This does not mean that the federal court will pre-try, as a matter of course, doubtful issues of fact to determine removability; the issue must be capable of summary determination and be proven with complete certainty." <u>Smoot v. Chi., Rock Island & Pac. R.R.</u> <u>Co.</u>, 378 F.2d at 882. In <u>Smoot v. Chicago, Rock Island & Pacific Railroad Co.</u>, the plaintiff died when his car collided with a freight train. <u>See</u> 378 F.2d at 881. The plaintiff's estate sued the railroad company and joined a non-diverse alleged employee as a defendant. <u>See</u> 378 F.2d at 881. It was undisputed that the diversity-destroying party's employment with the railroad company had "terminated almost fifteen months before the collision and that he was in no way connected with the acts of negligence ascribed to him." 378 F.2d at 881.

In recent unpublished decisions, the Tenth Circuit has adopted different articulations of the burden of proof for fraudulent joinder, two of which are from the United States Court of Appeals for the Fifth Circuit. In <u>Montano v. Allstate Indemnity Co.</u>, the Tenth Circuit quoted favorably <u>Hart v. Bayer Corp.</u>, 199 F.3d 239 (5th Cir. 2000), which states:

> To prove their allegation of fraudulent joinder [the removing parties] must demonstrate that there is no possibility that [plaintiff] would be able to establish a cause of action against [the joined party], in state court. In evaluating fraudulent joinder claims, we must initially resolve all disputed questions of fact and all ambiguities in the controlling law in favor of the non-removing party. We are then to determine whether that party has any possibility of recovering against the party whose joinder is questioned.

<u>Montano v. Allstate Indem. Co.</u>, 211 F.3d 1278, 2000 WL 525592, at *4-5 (alterations in original)(quoting <u>Hart v. Bayer Corp.</u>, 199 F.3d at 246)(internal quotation marks omitted). The Tenth Circuit states that the standard for proving fraudulent joinder "is more exacting than that for

dismissing a claim under Fed. R. Civ. P. 12(b)(6); indeed, the latter entails the kind of merits determination that, absent fraudulent joinder, should be left to the state court where the action commenced."  Montano v. Allstate Indem. Co., 211 F.3d 1278, 2000 WL 525592, at *2.  The Tenth Circuit in Montano v. Allstate Indemnity Co. also quoted from Batoff v. State Farm Insurance Co., 977 F.2d 848 (3d Cir. 1992), which states: "A claim which can be dismissed only after an intricate analysis of state law is not so wholly insubstantial and frivolous that it may be disregarded for purposes of diversity jurisdiction."  977 F.2d at 853.

In Nerad v. AstraZeneca Pharmaceuticals, Inc., the Tenth Circuit adopts a different articulation of the burden of proof.  See 203 F. App'x at 913.  The Tenth Circuit states that, where fraudulent joinder is asserted, "the court must decide whether there is a reasonable basis to believe the plaintiff might succeed in at least one claim against the non-diverse defendant."  203 F. App'x at 913 (citing Badon v. RJR Nabisco, Inc., 224 F.3d 382, 393 (5th Cir. 2000)).  The Tenth Circuit explains that "[a] 'reasonable basis' means just that: the claim need not be a sure-thing, but it must have a basis in the alleged facts and the applicable law."  203 F. App'x at 913.

The Fifth Circuit recognizes the inconsistencies in various articulations of the standard for fraudulent joinder and directly addressed the problem in Travis v. Irby, 326 F.3d 644 (5th Cir. 2003):

> Neither our circuit nor other circuits have been clear in describing the fraudulent joinder standard.  The test has been stated by this court in various terms, even within the same opinion.  For example, the Griggs [v. State Farm Lloyds, 181 F.3d 694 (5th Cir. 1999),] opinion states,
>
> > To establish that a non-diverse defendant has been fraudulently joined to defeat diversity, the removing party must prove . . . that there is *absolutely no possibility* that the plaintiff will be able to establish a cause of action against the non-diverse defendant in state court.

- 16 -

181 F.3d at 699 (emphasis added)(citing <u>Burden v. Gen. Dynamics Corp.</u>, 60 F.3d 213, 317 (5th Cir. 1995)).    The <u>Griggs</u> opinion later restates that test as follows -- "Stated differently, we must determine whether there is any reasonable basis for predicting that [the plaintiff] might be able to establish [the non-diverse defendant's] liability on the pleaded claims in state court."  181 F.3d at 699 (emphasis added).  Similarly, in summing up federal law, Moore's Federal Practice states at one point: "To establish fraudulent joinder, a party must demonstrate . . . the *absence of any possibility* that the opposing party has stated a claim under state law."    16 Moore's Federal Practice § 107.14[2][c][iv][A] (emphasis added).  It then comments: "The ultimate question is whether there is arguably a *reasonable basis* for predicting that state law might impose liability on the facts involved."    Although these tests appear dissimilar, "absolutely no possibility" vs. "reasonable basis," we must assume that they are meant to be equivalent because each is presented as a restatement of the other.

326 F.3d at 647 (emphases in <u>Travis v. Irby</u>).  The Fifth Circuit has settled upon this phrasing:

[T]he test for fraudulent joinder is whether the defendant has demonstrated that there is no possibility of recovery by the plaintiff against an in-state defendant, which stated differently means that there is no reasonable basis for the district court to predict that the plaintiff might be able to recover against an in-state defendant.

<u>Smallwood v. Ill. Cent. R.R. Co.</u>, 385 F.3d 568, 573 (5th Cir. 2004)("To reduce possible confusion, we adopt this phrasing of the required proof and reject all others, whether the others appear to describe the same standard or not.").

In <u>Zufelt v. Isuzu Motors America, LCC</u>, 727 F. Supp. 2d 1117, 1124 (D.N.M. 2009)(Browning, J.), the Court addresses the standard that courts should use when addressing fraudulent joinder and concluded that, to establish that a party was fraudulently joined, a defendant has the burden of demonstrating that "there is no possibility that the plaintiff would be able to establish a cause of action" against the party alleged to be fraudulently joined.  727 F. Supp. 2d at 1124-25 (citing <u>Montano v. Allstate Indem. Co.</u>, 211 F.3d 1278, 2000 WL 525592, at *4-5).  The Court explains:

[T]his District has consistently adopted the "possibility" standard when assessing fraudulent joinder claims.  <u>See</u> <u>Allen v. Allstate Ins. Co.</u>, No. CIV 08-0733, 2008 WL 6045497 (D.N.M. Oct. 31, 2008)(Browning, J.)(holding that the

claims asserted against the non-diverse defendant were "possibly viable under New Mexico law, and . . . sufficient to preclude federal jurisdiction"); Baeza v. Tibbetts, 2006 U.S. Dist. LEXIS 95317, at *11, 2006 WL 2863486 (stating that "[r]emand is required if any one of the claims against [the defendant] is possibly viable"); Provencio v. Mendez, No. CIV 05-623, 2005 U.S. Dist. LEXIS 39012, at *25, 2005 WL 3662957 (D.N.M. Sept. 29, 2005)(Browning, J.)(stating that "there must be no possibility the [p]laintiffs have a claim against [the non-diverse defendant]"); Couch v. Astec Indus., Inc., 71 F. Supp. 2d at 1147 (stating that, to defeat removal jurisdiction, "[t]he plaintiff need only demonstrate the possibility of the right to relief"). This Court, in Couch v. Astec Indus., Inc., noted with approval the language of the United States Court of Appeals for the Eleventh Circuit, which states that "if there is even a possibility that a state court would find that the complaint states a cause of action against any one of the resident defendants, the federal court must find that the joinder was proper and remand the case to the state court." Couch v. Astec Indus., Inc., 71 F. Supp. 2d at 1147 (quoting Triggs v. John Crump Toyota, Inc., 154 F.3d 1284, 1287 (11th Cir. 1998))(emphasis in original).

Zufelt v. Isuzu Motors Am., LCC, 727 F. Supp. 2d at 1229. In Brazell v. Waite, the Tenth Circuit states that the "removing party must show that the plaintiff has 'no cause of action' against the fraudulently joined defendant," but it did not further elaborate on that burden. 525 F. App'x at 881 (quoting Dodd v. Fawcett Publ'ns, Inc., 329 F.2d 82, 85 (10th Cir. 1964), and Roe v. Gen. Am. Life Ins. Co., 712 F.2d 450, 452 n.* (10th Cir. 1983)).

In 2013, the Tenth Circuit publishes its first opinion since 1946 regarding the burden of proof for demonstrating fraudulent joinder: "'To establish fraudulent joinder, the removing party must demonstrate either: (1) actual fraud in the pleading of jurisdictional facts, or (2) inability of the plaintiff to establish a cause of action against the non-diverse party in state court.'" Dutcher v. Matheson, 733 F.3d 980, 988 (10th Cir. 2013)(quoting Cuevas v. BAC Home Loans Servicing, LP, 648 F.3d 242, 249 (5th Cir. 2011)). In Dutcher v. Matheson, the Tenth Circuit reviews a district court's holding that it had diversity jurisdiction over a case where Utah citizens sued ReconTrust, a Texas-based national bank, Stuart T. Matheson, a Utah citizen, and Matheson's law firm. See 733 F.3d at 983, 987. The plaintiffs allege that Matheson and his law firm enabled

ReconTrust to conduct an illegal nonjudicial foreclosure by holding the foreclosure sales on behalf of the Texas-based bank.  See 733 F.3d at 983.  The defendants remove the case to federal court and alleged that the plaintiffs fraudulently joined the Utah defendants.  See 733 F.3d at 983.  The district court agrees, finding that, under Utah law, "an attorney cannot be held liable to a non-client absent fraud, collusion or privity of contract."  733 F.3d at 988.  The Tenth Circuit disagrees with that characterization of Utah law, concluding instead that, in the case on which the defendants relied, the Supreme Court of Utah "simply limited the circumstances in which a lawyer owes a duty of care to non-clients from actions arising out of the provision of legal services."  733 F.3d at 988.  In rejecting the claim of fraudulent joinder, the Tenth Circuit said

> that does not mean that the plaintiffs have stated a valid claim against Matheson and his law firm.  Or even that Matheson and his law firm are not somehow fraudulently joined.  But the defendants needed to clear a high hurdle to prove something they have yet to prove, i.e., fraudulent joinder.

733 F.3d at 989.

The Tenth Circuit did not elaborate on the defendant's burden to show fraudulent joinder, except to say that it is "a high hurdle."  733 F.3d at 989.  It quoted, however, Cuevas v. BAC Home Loans Servicing, LP, a Fifth Circuit opinion that repeats the clarified standard from Smallwood v. Illinois Central Railroad Co.  See Dutcher v. Matheson, 733 F.3d at 988 (10th Cir. 2013)(quoting Cuevas v. BAC Home Loans Servicing, LP, 648 F.3d at 249).

> Under the second way, the test is "whether the defendant has demonstrated that there is no possibility of recovery by the plaintiff against an in-state defendant, which stated differently means that there is no reasonable basis for the district court to predict that the plaintiff might be able to recover against an in-state defendant."  [Smallwood v. Ill. Cent. R.R. Co., 385 F.3d at 573.]  If there is no reasonable basis of recovery, then the court can conclude that the plaintiff's decision to join the in-state defendant was indeed improper, unless that showing compels the dismissal of all defendants.  There is no improper joinder if the defendants' showing compels the same result for the resident and nonresident defendants, because this simply means that the plaintiff's case is ill founded as to all of the defendants.  Such a

defense is more properly an attack on the merits of the claim, rather than an inquiry into the propriety of the joinder of the in-state defendant.

Cuevas v. BAC Home Loans Servicing, LP, 648 F.3d at 249 (emphasis in original)(citations omitted).  Based on the Tenth Circuit's history of relying on Fifth Circuit analysis in fraudulent joinder cases, the Tenth Circuit would likely approve this additional explanation of the fraudulent joinder standard.  Accordingly, the Court will use the following standard for fraudulent joinder: whether the defendant has demonstrated that there is no possibility that the plaintiff will obtain a judgment against an in-state defendant.  Cf. Zufelt v. Isuzu Motors Am., LCC, 727 F. Supp. 2d at 1124-25 (concluding that fraudulent joinder occurs when "there is no possibility that the plaintiff would be able to establish a cause of action" against the party alleged to be fraudulently joined).  No case sets forth the burden of proof that applies to (much rarer) allegations of actual fraud, such as plaintiff-defendant collusion . . . but the Court concludes that the clear-and-convincing standard -- the usual standard for fraud -- is appropriate, see, e.g., United States v. Thompson, 279 F.2d 165, 167 (10th Cir. 1960)("An allegation of fraud is a serious matter; it is never presumed and must be proved by clear and convincing evidence."  (citations omitted)).

A less-clear issue -- at least in other courts -- is whether fraudulent joinder permits the removal of actions that have been pending in state court for over a year.  Section 1446(c)(1) provides: "A case may not be removed under subsection (b)(3) on the basis of jurisdiction conferred by section 1332 more than 1 year after commencement of the action . . . ."  28 U.S.C. § 1446(c)(1).  The two district court cases within the Tenth Circuit to address the issue both conclude that fraudulent joinder does not permit the removal of actions that have been pending in state court for over a year, but the district courts issued those opinions before Congress amended § 1446 in 2012 to add the remainder (the omitted portion) of the sentence quoted earlier in this

paragraph: "unless the district court finds that the plaintiff has acted in bad faith in order to prevent a defendant from removing the action." 28 U.S.C. § 1446(c)(1). See Chidester v. Kaz, Inc., No. CIV 08-0776, 2009 WL 2588866, at *3 (N.D. Okla. Aug. 19, 2009)(Kern, J.); Caudill v. Ford Motor Co., 271 F. Supp. 2d 1324, 1327 (N.D. Okla. 2003)(Eagan, J.). Outside the Tenth Circuit, the Courts of Appeals have said little, and district courts appear more-or-less evenly split on the issue, with some district courts holding that a case can be removed on the basis of fraudulent joinder after the one-year mark, see Hardy v. Ajax Magnathermic Corp., 122 F. Supp. 2d 757, 759 (W.D. Ky. 2000)(Russell, J.); Johnson v. Heublein, Inc., 982 F. Supp. 438, 444-45 (S.D. Miss. 1997)(Barbour, J.); Barnett v. Sylacauga Autoplex, 973 F. Supp. 1358, 1367 (N.D. Ala. 1997)(Propst, J.); Leslie v. BancTec Serv. Corp., 928 F. Supp. 341, 346 (S.D.N.Y. 1996)(Batts, J.); Morrison v. Nat'l Ben. Life Ins. Co., 889 F. Supp. 945, 950-51 (S.D. Miss. 1995)(Barbour, J.); Saunders v. Wire Rope Corp., 777 F. Supp. 1281, 1282-83 (E.D. Va. 1991)(Williams, J.); Greer v. Skilcraft, 704 F. Supp. 1570, 1582-83 (N.D. Ala. 1989)(Pointer, J.), and others concluding that the fraudulent-joinder doctrine bows to the one-year limitation, see Codner v. Am. Home Prods. Corp., 123 F. Supp. 2d 1272, 1274 (W.D. Okla. 2000)(Cauthron, J.); Hattaway v. Engelhard Corp., 998 F. Supp. 1479, 1481-82 (M.D. Ga. 1998)(Fitzpatrick, J.); Russaw v. Voyager Life Ins. Co., 921 F. Supp. 723, 724-25 (M.D. Ala. 1996)(Thompson, J.); Zumas v. Owens-Corning Fiberglas Corp., 907 F. Supp. 131, 133-34 (D. Md. 1995)(Kaufman, J.); Price v. Messer, 872 F. Supp. 317, 319-21 (S.D. W. Va. 1995)(Haden, J.); Norman v. Sundance Spas, Inc., 844 F. Supp. 355, 356-57 (W.D. Ky. 1994)(Heyburn, J.); Brock v. Syntex Labs., Inc., 791 F. Supp. 721, 722-23 (E.D. Tenn. 1992)(Jarvis, J.); Cofer v. Horsehead Research & Dev. Co., 805 F. Supp. 541, 543-44 (E.D. Tenn. 1991)(Jordan, J.); O'Rourke v. Communique Telecomms., Inc., 715 F. Supp. 828, 829 (E.D. Mich. 1989)(Duggan, J.). Again, however, all of these cases

came before the addition of 28 U.S.C. § 1446(c)(1), which grafted a bad-faith exception to the one-year limitation, discussed at length later in this opinion. In <u>Aguayo v. AMCO Insurance Co.</u>, 59 F. Supp. 3d 1225, 1256 (D.N.M. Oct. 31, 2014)(Browning, J.), the Court concluded that, because § 1446(c)(1)'s bad-faith exception is procedural, rather than jurisdictional, <u>see</u> 59 F. Supp. 3d at 1270 (noting that Congress amended the one-year limitation to clarify that it is procedural by modeling it after the Fifth Circuit's interpretation in <u>Tedford v. Warner-Lambert Co.</u>, 327 F.3d 423, 427 (5th Cir. 2003)), the exception extends the applicability of the fraudulent-joinder doctrine past one year. <u>See</u> 59 F. Supp. 3d at 1256.

> The Court concludes that the addition of the bad-faith exception to the one-year limitation clarifies that the one-year limitation is procedural, rather than jurisdictional, and, thus, extends the applicability of fraudulent joinder doctrine past the one-year mark. Thus, defendants may remove a case on fraudulent joinder grounds even after it has been pending in state court for more than one year.

59 F. Supp. 3d at 1256.

The Tenth Circuit cannot review a district court's order to remand based on a finding of fraudulent joinder. <u>See</u> <u>Nerad v. AstraZeneca Pharms., Inc.</u>, 203 F. App'x at 913 (holding that, because the district court remanded based on its conclusion that it lacked subject-matter jurisdiction at the time of removal, 28 U.S.C. § 1447(d) precluded the Tenth Circuit from reviewing the order). The fraudulent joinder inquiry on a motion to remand is a subject-matter jurisdiction inquiry. <u>See</u> <u>Albert v. Smith's Food & Drug Ctrs., Inc.</u>, 356 F.3d at 1247.

**6.    Procedural Misjoinder.**[7]

Rule 20 of the Federal Rules of Civil Procedure provides:

------

[7]The Court refers to the doctrine as "procedural misjoinder," rather than "fraudulent misjoinder," because of the confusion that the word "fraudulent" has caused in the fraudulent joinder context. As the Honorable Martha A. Vázquez, then-Chief District Judge for the United States District Court for the District of New Mexico, once explained: "Fraudulent joinder is a term

    **(a)**      **Persons Who May Join or Be Joined.**

        **(1)**      **Plaintiffs.**  Persons may join in one action as plaintiffs if:

            **(A)**      they assert any right to relief jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and

            **(B)**      any question of law or fact common to all plaintiffs will arise in the action.

        **(2)**      **Defendants.**  Persons -- as well as a vessel, cargo, or other property subject to admiralty process in rem -- may be joined in one action as defendants if:

            **(A)**      any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and

            **(B)**      any question of law or fact common to all defendants will arise in the action.

        **(3)**      **Extent of Relief.**  Neither a plaintiff nor a defendant need be interested in obtaining or defending against all the relief demanded.  The court may grant judgment to one or more plaintiffs according to their rights, and against one or more defendants according to their liabilities.

Fed. R. Civ. P. 20(a).

---

of art.  It does not reflect on the integrity of plaintiff or counsel, but rather exists regardless of the plaintiff's motives when the circumstances do not offer any other justifiable reason for joining the defendant."  <u>Baeza v. Tibbetts</u>, No. CIV 06-0407, 2006 WL 2863486, at *1 n.1 (D.N.M. July 7, 2006)(Vázquez, J.).  The Court will refer to the doctrine as "procedural misjoinder" to avoid expanding that confusion.  <u>Flores-Duenas v. Briones</u>, 2013 WL 6503537, at *22 n.8.

"Procedural misjoinder," also known as "fraudulent misjoinder," is a recent development that is related to fraudulent joinder, but distinct from it.  Professor E. Farish Percy of the University of Mississippi School of Law has explained:

> Fraudulent misjoinder occurs when a plaintiff sues a diverse defendant in state court and joins a non-diverse or in-state defendant even though the plaintiff has no reasonable procedural basis to join such defendants in one action.  While the traditional fraudulent joinder doctrine inquires into the substantive factual or legal basis for the plaintiff's claim against the jurisdictional spoiler, the fraudulent misjoinder doctrine inquires into the procedural basis for the plaintiff's joinder of the spoiler.  Most state joinder rules are modeled after the federal joinder rule that authorizes permissive joinder of parties when the claims brought by or against them arise "out of the same transaction, occurrence, or series of transactions or occurrences" and give rise to a common question of law or fact.  Thus, in a case where the joined claims are totally unrelated, a federal district court may find removal jurisdiction pursuant to the fraudulent misjoinder doctrine even though the plaintiff has a reasonable substantive basis for the claim against the jurisdictional spoiler.

E. Farish Percy, Defining the Contours of the Emerging Fraudulent Misjoinder Doctrine, 29 Harv. J.L. & Pub. Pol'y 569, 572 (2006)(footnotes omitted).

The United States Court of Appeals for the Eleventh Circuit formulated the doctrine in Tapscott v. MS Dealer Service Corp., and explained its purpose as follows:

> Misjoinder may be just as fraudulent as the joinder of a resident defendant against whom a plaintiff has no possibility of a cause of action.  A defendant's "right of removal cannot be defeated by a fraudulent joinder of a resident defendant having no real connection with the controversy."  Wilson v. Republic Iron & Steel Co., 257 U.S. 92, 97 (1921).

Tapscott v. MS Dealer Serv. Corp., 77 F.3d at 1360 (footnote omitted).  The facts of Tapscott v. MS Dealer Service Corp. illustrate the doctrine's operation.  The case involved two proposed state-law class actions, joined together in a single case: (i) a class action in which an Alabama resident alleged that four defendants, including an Alabama resident, had violated various provisions of Alabama fraud and consumer-protection law in connection with the "sale of 'service

contracts' on automobiles sold and financed in Alabama," 77 F.3d at 1355; and (ii) a class action

in which Alabama alleged three defendants, including Lowe's Home Centers, a North Carolina

resident, had violated Alabama consumer-protection law in connection with the sale of retail

product, <u>see</u> 77 F.3d at 1355.   The second class action named Lowe's Home Centers as "the

putative defendant class representative for a 'merchant' class."  77 F.3d at 1355.  This unified case

matched particular plaintiffs "with particular defendants against whom they allege individual

claims"; as relevant here, the only two class representatives for the class action were Alabama

residents, and they asserted claims against only Lowe's Home Centers.  77 F.3d at 1359-60.

The district court concluded that there was no allegation of joint liability or conspiracy,

and that the claims involved in the car-sales class action were "wholly distinct from the alleged

transactions involved in the" retail-products class action.  77 F.3d at 1360.  Rather, "[t]he only

similarity between" the two classes was that they both alleged violations of Alabama statutory law;

"[s]uch commonality on its face [was] insufficient for joinder."  77 F.3d at 1360.  The Eleventh

Circuit agreed and explained:

> Although certain putative class representatives may have colorable claims against
> resident defendants in the putative "automobile" class, these resident defendants
> have no real connection with the controversy involving [the retail-products
> plaintiffs and] Lowe's in the putative "merchant" class action.  We hold that the
> district court did not err in finding an attempt to defeat diversity jurisdiction by
> fraudulent joinder.  We do not hold that mere misjoinder is fraudulent joinder, but
> we do agree with the district court that Appellants' attempt to join these parties is
> so egregious as to constitute fraudulent joinder.

77 F.3d at 1360.

The procedural misjoinder doctrine's reach outside the Eleventh Circuit is unclear.  The

Tenth Circuit recently described the doctrine's status: "It appears that the Fifth Circuit may also

accept procedural misjoinder.  No circuit has rejected the doctrine, but the district courts and the

commentators are split." Lafalier v. State Farm Fire & Cas. Co., 391 F. App'x at 739 (citing, for the proposition that the Fifth Circuit accepts the doctrine, Crockett v. R.J. Reynolds Tobacco Co., 436 F.3d at 532-33; In re Benjamin Moore & Co., 309 F.3d 296, 298 (5th Cir. 2002)). While the Tenth Circuit recognized that "[t]here may be many good reasons to adopt procedural misjoinder," it declined to adopt the doctrine, because it would not have changed the result in that case. Lafalier v. State Farm Fire & Cas. Co., 391 F. App'x at 739. See 14B Charles A. Wright & Arthur Miller, Federal Practice & Procedure § 3723, at 867-77 & n.122 (3d ed. 2009)(confirming the developing doctrine's unclear status). The Court, however, has adopted the doctrine and applied it in two cases, although it concluded in both cases that no procedural misjoinder occurred, and both cases thus resulted in remand. See Ullman v. Safeway Ins. Co., 995 F. Supp. 2d 1196 (D.N.M. 2013)(Browning, J.); Flores-Duenas v. Briones, 2013 WL 6503537, at *1.

**7.    The "Bad Faith" Exception to the One-Year Removal Bar for Diversity Cases.**

Since 1988, 28 U.S.C. § 1446 has provided that no case that has been pending more than one year in state court can be removed on the basis of diversity jurisdiction.[8]  On January 6, 2012,

---

[8]The one-year limitation applies only to standard diversity jurisdiction under 28 U.S.C. § 1332(a) and not to class actions removed under § 1332(d), which is a part of the Class Action Fairness Act of 2005, Pub. L. No. 109-2, 119 Stat. 4-14 ("CAFA"). Although exempting CAFA from the one-year limitation appears to defy the § 1446(c)(1)'s text, which refers to cases brought "on the basis of jurisdiction conferred by section 1332," another section of Title 28 clarifies the issue:

> A class action may be removed to a district court of the United States in accordance with section 1446 (except that the 1-year limitation under section 1446(c)(1) shall not apply), without regard to whether any defendant is a citizen of the State in which the action is brought, except that such action may be removed by any defendant without the consent of all defendants.

28 U.S.C. § 1453(b) (emphasis added). See Reece v. Bank of N.Y. Mellon, 760 F.3d 771, 775-76 (8th Cir. 2014).

Congress put into effect the Federal Courts Jurisdiction and Venue Clarification Act of 2011, Pub. L. No. 112-63, 125 Stat. 760, 762 ("JVCA"), which, among other changes, added a bad-faith exception to the one-year limitation. Subsection (c) reads as follows, with the sole sentence of the statute that pre-exists the JVCA underlined:

**Requirements; removal based on diversity of citizenship.** --

**(1)** <u>A case may not be removed under subsection (b)(3) on the basis of jurisdiction conferred by section 1332 more than 1 year after commencement of the action,</u> unless the district court finds that the plaintiff has acted in bad faith in order to prevent a defendant from removing the action.

**(2)** If removal of a civil action is sought on the basis of the jurisdiction conferred by section 1332(a), the sum demanded in good faith in the initial pleading shall be deemed to be the amount in controversy, except that --

    **(A)** the notice of removal may assert the amount in controversy if the initial pleading seeks --

        **(i)** nonmonetary relief; or

        **(ii)** a money judgment, but the State practice either does not permit demand for a specific sum or permits recovery of damages in excess of the amount demanded; and

    **(B)** removal of the action is proper on the basis of an amount in controversy asserted under subparagraph (A) if the district court finds, by the preponderance of the evidence, that the amount in controversy exceeds the amount specified in section 1332(a).

**(3)**     **(A)** If the case stated by the initial pleading is not removable solely because the amount in controversy does not exceed the amount specified in section 1332(a), information relating to the amount in controversy in the record of the State proceeding, or in responses to discovery, shall be treated as an 'other paper' under subsection (b)(3).[9]

---

[9]Subsection (b)(3) provides:

> **(B)**    If the notice of removal is filed more than 1 year after commencement of the action and the district court finds that the plaintiff deliberately failed to disclose the actual amount in controversy to prevent removal, that finding shall be deemed bad faith under paragraph (1).

28 U.S.C. § 1446(c) (underscoring added to show pre-JVCA content).

A plaintiff's "bad faith" can manifest itself in either of the two requirements for diversity jurisdiction: (i) a plaintiff can name or retain nondiverse parties or forum-citizen defendants to defeat complete diversity or the forum-defendant rule, respectively; or (ii) it can obfuscate the quantity of damages it seeks for the purpose of defeating the amount-in-controversy requirement.[10] It is clear how the Court should construe the second requirement -- the Tenth Circuit's opinion in

---

> Except as provided in subsection (c), if the case stated by the initial pleading is not removable, a notice of removal may be filed within 30 days after receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable.

28 U.S.C. § 1446(b)(3). The combination of subsection (c)(3)(A)'s new provisions and subsection (b)(3)'s pre-JVCA provisions means that the defendant's thirty-day clock to remove a case starts whenever they have sufficient information -- obtained from anywhere in the case, and not merely from the pleadings or settlement communications -- to conclude that the case meets the amount-in-controversy requirement.

[10]As previously explained, it was unclear before the JVCA's passage whether the common-law doctrine of fraudulent joinder creates an exception to the forum-defendant rule or just to complete diversity. See supra Law Regarding Removal, Remand, Fraudulent Joinder, Procedural Misjoinder, and Bad Faith Part 4. The bad-faith exception, however, is statutory, and the statute applies to all cases in which "the plaintiff has acted in bad faith in order to prevent a defendant from removing the action." 28 U.S.C. § 1446(c)(1). The statute's plain meaning thus includes both the bad-faith joinder of a nondiverse party -- which defeats removal jurisdiction by defeating original diversity jurisdiction -- and the bad-faith joinder of a forum-citizen defendant -- which only defeats removal jurisdiction. See Aguayo v. AMCO Insurance Co., 59 F. Supp. 3d at 1261 n.15 ("Moreover, as the Court is largely writing on a blank slate in interpreting the bad-faith exception, it sees no reason to read in a nonsensical double standard.").

McPhail v. Deere & Co. has already fleshed out a detailed framework for analyzing the amount-in-controversy requirement, and the JVCA's legislative history indicates that, far from abrogating McPhail v. Deere & Co., Congress intended § 1446(c)'s amount-in-controversy provisions to codify the approach that the Seventh Circuit chartered in Meridian Securities Insurance Co. v. Sadowski and that the Tenth Circuit advanced in McPhail v. Deere & Co., see Report to the Committee on the Judiciary of the United States House of Representatives § 103, at 15-16, H.R. 112-10 (2011)(citing only two cases under the heading "Amount in controversy and removal timing," McPhail v. Deere & Co. and Meridian Securities Insurance Co. v. Sadowski, and stating that the JVCA's amendments "follow the lead of [those] cases" (emphasis omitted)).[11]  On the

---

[11]The JVCA's legislative history provides:

> Section 103(b)(3)(C) of the bill further amends subsection 1446(c) by inserting two new paragraphs, (2) and (3), to address issues relating to uncertainty of the amount in controversy when removal is sought, e.g., when state practice either does not require or permit the plaintiff to assert a sum claimed or allows the plaintiff to recover more than an amount asserted.  Although current practice allows defendants to claim that the jurisdictional amount is satisfied and remove, several issues complicate this practice.

> First, circuits have adopted differing standards governing the burden of showing that the amount in controversy is satisfied.  The ''sum claimed'' and ''legal certainty'' standards that govern the amount in controversy requirement when a plaintiff originally files in Federal court have not translated well to removal, where the plaintiff often may not have been permitted to assert in state court a sum claimed or, if asserted, may not be bound by it.  Second, many defendants faced with uncertainty regarding the amount in controversy remove immediately -- rather than waiting until future developments provide needed clarification -- out of a concern that waiting and removing later will result in the removal's being deemed untimely.  In these cases, Federal judges often have difficulty ascertaining the true amount in controversy, particularly when removal is sought before discovery occurs.  As a result, judicial resources may be wasted and the proceedings delayed when little or no objective information accompanies the notice to remove.

> Proposed new paragraph 1446(c)(2) allows a defendant to assert an amount in

controversy in the notice of removal if the initial pleading seeks non-monetary relief or a money judgment, in instances where the state practice either does not permit demand for a specific sum or permits recovery of damages in excess of the amount demanded. The removal will succeed if the district court finds by a preponderance of the evidence that the amount in controversy exceeds the amount specified in 28 U.S.C. § 1332(a), presently $75,000.

If the defendant lacks information with which to remove within the 30 days after the commencement of the action, the bill adds a new subparagraph 1446(c)(3)(A) to clarify that the defendant's right to take discovery in the state court can be used to help determine the amount in controversy. If a statement appears in response to discovery or information appears in the record of the state proceedings indicating that the amount in controversy exceeds the threshold amount, then proposed subparagraph 1446(c)(3)(A) deems it to be an ''other paper'' within the meaning of paragraph 1446(b)(3), thereby triggering a 30-day period in which to remove the action. The district court must still find by a preponderance of the evidence that the jurisdictional threshold has been met.

In adopting the preponderance standard, new paragraph 1446(c)(2) would follow the lead of recent cases. See McPhail v. Deere & Co., 529 F.3d 947 (10th Cir. 2008); Meridian Security Ins. Co. v. Sadowski, 441 F.3d 536 (7th Cir. 2006). As those cases recognize, defendants do not need to prove to a legal certainty that the amount in controversy requirement has been met. Rather, defendants may simply allege or assert that the jurisdictional threshold has been met. Discovery may be taken with regard to that question. In case of a dispute, the district court must make findings of jurisdictional fact to which the preponderance standard applies. If the defendant establishes by a preponderance of the evidence that the amount exceeds $75,000, the defendant, as proponent of Federal jurisdiction, will have met the burden of establishing jurisdictional facts.

Under proposed subparagraph 1446(c)(3)(B), if the notice of removal is filed more than one year after the commencement of the action, and a finding is made that the plaintiff deliberately failed to disclose the actual amount in controversy to prevent removal, that finding would be deemed bad faith under paragraph (1).

Section 103(b)(4)(A) of the bill inserts a heading for subsection 1446(d). Section 103(b)(4)(B) makes a technical amendment replacing ''thirty'' with ''30'' each place it appears in section 1446. Section 103(b)(4)(C) strikes current subsection (e) (a criminal removal provision, which is now codified as part of new section 1454). Section 103(b)(4)(D) redesignates current subsection (f) as new subsection (e), and inserts a new heading.

Report to the Committee on the Judiciary of the United States House of Representatives § 103, at 15, H.R. 112-10 (2011).

other hand, § 1446(c)'s text says nothing at all about the first requirement, and, before the Court issued its ruling in Aguayo v. AMCO Insurance Co., no court had attempted to comprehensively define it.  The JVCA's legislative history gives the Court some clue as to the exception's basic nature, but, in answering this question -- what constitutes "bad faith" vis-à-vis improperly joining, or keeping joined, nondiverse parties or forum-citizen defendants -- the Court has staked out its own definition.

In Aguayo v. AMCO Insurance Co., the Court became the first federal court to comprehensively construe the new § 1446(c).  There, the Court concluded that the bad-faith exception sets forth a two-step standard.  See Aguayo v. AMCO Ins. Co., 59 F. Supp. 3d at 1262.

> For the reasons explained in the Analysis, the Court construes the bad-faith exception as a two-step standard.  First, the Court inquires whether the plaintiff actively litigated against the removal spoiler in state court: asserting valid claims, taking discovery, negotiating settlement, seeking default judgments if the defendant does not answer the complaint, et cetera.  Failure to actively litigate against the removal spoiler will be deemed bad faith; actively litigating against the removal spoiler, however, will create a rebuttable presumption of good faith.  Second, the defendant may attempt to rebut this presumption with evidence already in the defendant's possession that establishes that, despite the plaintiff's active litigation against the removal spoiler, the plaintiff would not have named the removal spoiler or would have dropped the spoiler before the one-year mark but for the plaintiff's desire to keep the case in state court.  The defendant may introduce direct evidence of the plaintiff's bad faith at this stage -- e.g., electronic mail transmissions in which the plaintiff states that he or she is only keeping the removal spoiler joined to defeat removal -- but will not receive discovery or an evidentiary hearing in federal court to obtain such evidence.

Aguayo v. AMCO Ins. Co., 59 F. Supp. 3d at 1262-63.

## ANALYSIS

---

District courts in other Circuits may need to grapple with the extent to which the JVCA codifies the McPhail v. Deere & Co. approach.  The Court, however, is in the Tenth Circuit, and McPhail v. Deere & Co. binds it unless intervening statute or Supreme Court case law invalidates the holding.  The JVCA's legislative history makes it clear that McPhail v. Deere & Co. remains intact.

The Court grants the Motion in part and denies the Motion in part.  The Court lacks subject-matter jurisdiction, because the parties are not diverse, and Spur Energy has not demonstrated that there is no possibility that the Plaintiffs will be able to obtain a judgment against the New Mexico Defendants.  Spur Energy, thus, has not shown that the Plaintiffs fraudulently have joined the New Mexico Defendants.  Accordingly, the Court remands this case to the County of Santa Fe, First Judicial District Court, State of New Mexico.

The Tenth Circuit's fraudulent-joinder caselaw requires a defendant removing on the basis of fraudulent joinder to demonstrate that there is "no possibility that the plaintiff will obtain a judgment against an in-state defendant."  Bailey v. Markham, 611 F. Supp. 3d 1177, 1218 (D.N.M. 2020)(Browning, J.)("Bailey")(citing Zufelt v. Isuzu Motors America, LCC, 727 F. Supp. 2d at 1124-25).  Put another way, this means "that there is no reasonable basis for the district court to predict that the plaintiff might be able to recover against an in-state defendant."  Bailey, 611 F. Supp. 3d at 1218 (quoting Cuevas v. BAC Home Loans Servicing, LP, 648 F.3d at 249).  A defendant can make this showing by demonstrating that the plaintiffs lack a cause of action against the in-state defendants, that is to say, that state or federal law does not provide a recourse for a particular injury.  See Bailey, 611 F. Supp. 3d at 1232 ("If the Defendants prove that there is no private right of action to sue a licensed contractor under the Construction Industries Licensing Act, then Defendants can establish fraudulent joinder.")(citing Bio-Tec Envtl., LLC v. Adams, 782 F. Supp. 2d 1208, 1216 (D.N.M. 2011)(Browning, J.)).  Alternatively, a defendant can argue that the plaintiffs cannot satisfy the requirements for a valid cause of action; importantly, however, the "fraudulent-joinder standard is not whether the complaint states sufficient facts to state a plausible claim, but rather whether the defendants demonstrate that there is no possibility that the plaintiff will obtain a judgment against the defendants claiming fraudulent joinder."  Bailey, 611 F. Supp.

3d at 1238 (citing <u>Bio-Tec Envtl., LLC v. Adams</u>, 782 F. Supp. 2d at 1214).

Spur Energy takes this second route: in its Notice of Removal, filed December 9, 2022

(Doc. 1), it argues:

> Mr. Bishop, Mr. Boring, and Mr. Folmar were not present at the Site, and were not responsible for, or involved with, the operations ongoing at the Site on the date of the alleged incident. <u>See</u> [Affidavit of John Nabors ¶¶ 5-9, at 2-3 (dated December 9, 2022), filed December 9, 2022 (Doc. 1-1)("Nabors Aff.")]. Mr. Nabors' affidavit also makes clear that Mr. Bishop, Mr. Boring, and Mr. Folmar did not supervise or direct the work of the Mr. Alvarez or Mr. Martinez, and none of them were responsible for supervising or directing Mr. Alvarez or Mr. Martinez's work. Accordingly, Plaintiffs cannot maintain a viable cause of action against either Mr. Bishop, Mr. Boring, or Mr. Folmar.

Notice of Removal at 7. Spur Energy reiterates this theme, moreover, in Defendant Spur Energy

Partners LLC's Supplement To Its Response In Opposition to Motion to Remand at 4, filed March

20, 2023 (Doc. 27)("Supplement"). The Supplement attaches new affidavits from the New Mexico

Defendants and Nabors, and asserts that the affidavits show that: (i) none of the New Mexico State

Defendants had any involvement with Alberto Alvarez, Jr.'s and Israel Martinez' work; (ii) none

of the New Mexico State Defendants "have any involvement whatsoever with the Tanks";

(iii) none of the New Mexico State Defendants had any supervisory responsibilities at the Halberd

State #71H Well site ("Well Site"), where Alvarez and Martinez died; and (iv) none of the New

Mexico State Defendants had any involvement with the Well Site on the date Alvarez and Martinez

died. Supplement at 4.

These assertions do not rule out, however, the possibility that the Plaintiffs could recover

"if one or more of the [New Mexico State] Defendants were supposed to be [at the Well Site] but

were not." Motion at 5. The Complaint for Damages Arising From Wrongful Death, filed

November 10, 2022, in State Court, filed December 9, 2022, in federal court (Doc. 1-

2)("Complaint"), alleges that all of the Defendants "owed a duty to the deceased to exercise

reasonable care and safety, maintain its jobsite in a reasonably safe condition and provide a reasonably safe work environment." Complaint ¶ 60, at 10. The Complaint, in other words, alleges that the New Mexico Defendants' breach of their duty of care inheres in the lack of oversight over the frac tanks. Although the Complaint's factual allegations related to the New Mexico Defendants' breach are "slim," the Court's role, at this stage, does not involve determining whether the Plaintiffs state a valid claim. Bailey, 611 F. Supp. 3d at 1238. Instead, the analysis focuses on whether Spur Energy clears the "high hurdle to prove" fraudulent joinder. Dutcher v. Matheson, 733 F.3d at 989. Spur Energy has not cleared this hurdle. Oil-and-gas tort claims inevitably involve litigation about who at the job site has what duty of care. Spur Energy may silo its construction and production foremen's duties such that the foremen do not monitor drilling-stage frac tanks on an adjacent well pad, but the evidence may show that the industry custom is for foreman to monitor frac tank cleanings anyway. This custom, in turn, may bear on the contours of the New Mexico Defendants' duty of care. Alternatively, there is the possibility that Spur Energy may continue to lease the drilling-stage frac tanks for use at the production stage, such that, eventually, the tanks will become the production foremen's or the construction foreman's responsibility. If discovery reveals this to be the case, a foreman may have a duty to monitor the frac tanks that will fall eventually within his purview. The bottom line is that Spur Energy's affidavits setting forth the New Mexico Defendants' lack of involvement with and supervision over the frac tanks do not rule out the possibility that the Plaintiffs could recover against the New Mexico Defendants pursuant to negligence theories grounded in the lack of supervision. See Methola v. Eddy Cnty., 1980-NMSC-145, ¶ 20, 95 N.M. 329, 332, 622 P.2d 234, 238 (holding that negligence may be premised on "acts of omission as well as acts of commission"). Accordingly, the Court does not dismiss the New Mexico State Defendants. The parties, therefore,

are not diverse, and the Court does not have subject-matter jurisdiction.

**IT IS ORDERED** that: (i) the Plaintiffs' Motion to Remand and For Costs, filed January 9, 2023 (Doc. 7), is granted in part and denied in part; (ii) the case is remanded to the County of Santa Fe, First Judicial District Court, State of New Mexico; (iii) and all parties shall bear their own attorney's fees and costs.

_____
UNITED STATES DISTRICT JUDGE

*Counsel:*

Dennis K. Wallin
R. Daniel Fleck
The Spence Law Firm, LLC
Albuquerque, New Mexico

--and--

David Elias Idinopulos
Ali M. Morales
Michael C. Ross
Elias Law P.C.
Albuquerque, New Mexico

     *Attorneys for the Plaintiffs*

Michael M. Jett
Tim Redden, Jr.
Hall Maines Lugrin, PC
Houston, Texas

-- and --

Jaclyn M. McLean
Hinkle Shanor LLP

Santa Fe, New Mexico

   *Attorneys for Defendant Spur Energy Partners, LLC*

Henry M. Bohnhoff
Jeffrey R. Taylor
Rodey, Dickason, Sloan, Akin & Robb, P.A.
Albuquerque, New Mexico

   *Attorneys for Defendant Gravity Oilfield Services, LLC*